# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Terry Metcalf )<br>73-4273 Hulikoa Drive )<br>Kailua-Kona, Hawaii 96740 )<br> )<br>Metcalf Construction Company, Inc. )<br>73-4273 Hulikoa Drive )<br>Kailua-Kona, Hawaii 96740 )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>Donald C. Winter )<br>Secretary of the United States Navy )<br>Office of the Secretary of the Navy )<br>Department of the Navy )<br>1000 Navy Pentagon Room 4D572 )<br>Washington, DC. 20350-1000 )<br> )<br>and )<br> )<br>Mark O. Wilkoff )<br>Suspending and Debarring Official )<br>Office of the General Counsel )<br>Department of the Navy )<br>720 Kennon Street SE, Bldg 36, Room 214 )<br>Washington Navy Yard, DC 20374-5012 ) | Civil Action No.:_____ |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FROM DEBARMENT ORDER

Plaintiffs Metcalf Construction Company, Inc. and Terry Metcalf (collectively, "Metcalf"), by and through their undersigned counsel, bring this action against Donald C. Winter, Secretary of the United States Navy, and Mark O. Wilkoff for temporary restraining order, preliminary and permanent injunctions, and for a declaratory judgment related to the Navy's debarment of Metcalf. In support thereof, Plaintiffs respectfully state:

**PARTIES**

1.      Metcalf Construction Company, Inc. ("MCCI" or "Metcalf") is a Hawaii

Corporation with its principal place of business located at 73-4273 Hulikoa Drive, Kailua-Kona,

HI  96740.  MCCI is a small, HUBZone business engaged primarily in the construction trade as a

general contractor.

2.      Terry Metcalf is the President and Chief Executive Officer of MCCI.

3.      Donald C. Winter is the Secretary of the United States Navy (the "Navy") which

is a United States Federal Government Agency with its principal place of business in

Washington, DC.

4.      Mark O. Wilkoff is the Suspending and Debarring Official for the Navy.  His

principal place of business is Washington, DC.

**JURISDICTION**

5.      This Court has jurisdiction over this matter as an agency's decision to debar a

government contractor is subject to review under the standards prescribed in the Administrative

Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*

**BACKGROUND FACTS**

6.      On or about December 31, 2002, Plaintiff MCCI, a HUBZone contractor, was

awarded Contract N62742-02-C-1313 by the Navy to design and construct 212 new housing

units on the Marine Corps Base Hawaii in Kaneohe Bay (the "Contract").  The total original

Contract price was $48,370,000.

7.      MCCI was awarded the Contract after Metcalf successfully protested its

elimination from the competition under the Solicitation to the United States Court of Federal

Claims in *Metcalf Construction Company v. United States,* 53 Fed. Cl. 617 (Fed Cl. 2002).  In

that decision, the Court found that Metcalf had met its heavy burden of showing by clear and convincing evidence that the Navy had failed to act in accordance with federal procurement law and regulation when it eliminated Metcalf from the competitive range for the stated basis. *Id.* at 646. In addition, the Court found unfair and unequal treatment by the Navy, when one offeror was informed by the Navy of a defect in its proposed pricing and given the opportunity to correct, while Metcalf was eliminated from the competition based on the exact same defect without having the same notice or opportunity to correct. *Id.* at 635. The Court also noted its curiosity with the Navy's notification to Metcalf of its elimination <u>after</u> the contract was awarded to Lend Lease Actus, a large business. *Id.* at 633-634.

8.      After award of the Contract, Metcalf commenced performance and substantially completed the project on or about March 1, 2007. Throughout performance of the Contract, Metcalf was subjected to numerous instances of "bad faith" conduct by Navy officials which substantially increased Metcalf's costs and time of performance on the Project. The Navy's bad faith conduct is described in detail in a global certified claim that Metcalf submitted to the Navy on March 30, 2007. A copy of that global certified claim, without attachments, is attached hereto as Exhibit 1.[1] As a result of the Navy's bad faith conduct, Metcalf's global certified claim seeks damages for breach of contract totaling $26,380,571. On October 4, 2007, Metcalf revised its claimed damages and now seeks $26,089,139 for breach damages. See Exhibit 2.

9.      To date, the Navy has not issued a final decision of the Contracting Officer in response to Metcalf's global certified claim, but indicated a written intention to respond by January 18, 2008. See Exhibit 3.

---

[1] Plaintiffs have filed with the Court one set of <u>Consolidated Exhibits</u> in support of <u>Plaintiffs' Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Declaratory Relief from Debarment Order, Plaintiffs' Motion for Temporary Restraining Order, Plaintiffs' Motion for Preliminary Injunction,</u> and <u>Plaintiffs' Memorandum of Points and Authorities</u> in support of all pleadings.

10.    Included within Metcalf's global certified claim are certain costs associated with the handling and removal of Chlordane contaminated soil within the footprint of the project. Chlordane, a carcinogen, is a chemical that had been used for treating termite infestations until it was banned by the EPA in 1988. There was no indication in the Solicitation for the Contract that Chlordane levels at the site would require any special construction activities. The Navy's issuance of several Contract Modifications in connection with Metcalf's additional work associated with chlordane-contaminated soils acknowledged that the presence of chlordane in the project's soils constituted a differing site condition.

11.    Two Chlordane-related modifications were Unilateral Modification A00016, issued on November 1, 2005, which added $592,914 to the contract amount and extended the completion date by 63 Calendar Days, and Unilateral Modification A00017, issued on December 22, 2005, which added another $10,000 to the contract amount. These modifications are attached as Exhibit 4.

12.    On or about September 20, 2006, prior to submission of its global certified claim, Metcalf submitted to the Navy a Request for Equitable Adjustment ("REA") in the amount of $5,214,760 for Metcalf's additional costs for handling and disposing of Chlordane contaminated soil in excess of amounts granted by the Navy in Unilateral Modifications A00016 and A00017 ("Metcalf September 2006 REA"). See Exhibit 5.

13.    On or about December 13, 2006, a meeting was conducted between the Navy and Metcalf to discuss Metcalf's September 2006 REA for Modifications A00016 and A00017. (See Declaration of W. Chun at Exhibit 6). The purpose of the meeting was for the Navy to provide a status report of its progress reviewing the REA. *Id.* At that time, while its review was not complete, the Navy informed Metcalf that the vast majority of line items included in the REA

would be denied but provided no substantive explanation for the result. *Id.* The Navy informed Metcalf that a copy of its detailed evaluation would be transmitted within two weeks of the meeting. *Id.* No other meetings were conducted between the Navy and Metcalf concerning this REA. *Id.*

14.    On or about January 23, 2007, the Navy Resident Officer in Charge of Construction ("ROICC") issued a determination (the "ROICC Determination Letter"), finding that two of the twenty eight line items in Metcalf's September 2006 REA, totaling $101,434, were compensable and a modification was forthcoming. See Exhibit 7. The ROICC denied Metcalf's entitlement to the remaining twenty six line items. *Id.* The ROICC Determination Letter provided a summary explanation for the Navy's position for each line item in Metcalf's REA. *Id.* Contrary to the ROICC's statement in the Determination Letter, no "face-to-face" negotiations ever took place on December 14, 2006, or any other relevant time, between Metcalf and the Navy regarding Metcalf's REA for Modifications A00016 and A00017. See Exhibit 6, Declaration of Walter Chun.

15.    On April 5, 2007, the Contracting Officer issued a unilateral modification to the Contract in the amount of $101,434 as compensation for Metcalf's September 2006 REA, in accordance with the Navy's correspondence dated January 23, 2007. See Exhibit 8.

### THE DEBARMENT PROCEEDINGS

16.    On or about May 1, 2007, Metcalf received notice from Mark O. Wilkoff, the Suspending and Debarring Official for the Navy ("SDO") that a debarment action had been initiated against Metcalf and Terry Metcalf. (the "Proposed Debarment Letter") A copy of the Proposed Debarment Letter is attached hereto as Exhibit 9. The Proposed Debarment Letter consists of a two page cover letter from the SDO incorporating a four page memorandum to the

SDO from an associate counsel in the Navy's Office of General Counsel identified as Kristin Becker. The cover letter does not state any independent basis for the proposed debarment and simply adopts the associate counsel's memorandum by reference.

17.    The substantive reason for Metcalf's proposed debarment is the allegation by the Navy that "more than 98% of the costs claimed [in Metcalf's September 2006 REA for Modifications A00016 and A00017] were unsupported, based on factual inaccuracies, unrelated to the subject of the REA, or constituted double billing for work already paid and/or required by the contract." See Exhibit 9 at page 5. This allegation is based solely on – the ROICC Determination Letter which Ms. Becker quotes extensively in the memorandum in support of the debarment.

18.    The Proposed Debarment Letter listed six specific items from the REA that were characterized as "[s]everal of the more striking examples of double billing and submission of clearly non-compensable costs." See Exhibit 9 at pages 4-5. The six items listed were:

a.    Metcalf submitted Proposed Contract Modification (PCM) 33 and 35 and related invoices as supporting data for Line Items 1 and 2. Both of these PCMs were previously negotiated and paid under bilateral modification A00019;

b.    Metcalf submitted KEI invoices 26-30 and 26-40 as supporting data for Line Item 4. Each of these invoices includes payment for 38 hours of work by Tony Barnard (Site Safety Health Officer) during the same work days from 5/1/06 through 5/11/06. Not only does this constitute double billing for Mr. Barnard's time on those days, but Metcalf is required under the contract to provide a full-time SSHO. Therefore, Metcalf cannot request *any* additional funds for SSHO services under the contract, let alone double billing for additional services. Further, SSHO services are wholly unrelated to modifications A000016 and A000017, the subject of the REA;

c.    Metcalf requested attorney costs for the modifications and compliance with EPA regulations as part of Line Item #12. The modifications were unilateral and did not involve negotiations with Metcalf counsel. Metcalf is required under the contract to comply with all environmental regulations. Further, Metcalf provided no invoices or supporting documentation for this line item;

      d.      Metcalf requested $825,743 for a 'site electrical delay' in Line Item 16. Metcalf provided as supporting documentation a subcontractor invoice including 751.11 labor hours that were previously paid under modification A00003. Under modification A00003, Metcalf received $585,565 for relocating electrical circuit 104;

      e.      Metcalf requested delay impact costs for Dorvin Leis in Line Item 21. Dorvin Leis claimed it was delayed by 123 calendar days, but the ROICC records showed that the subcontractor was actually working during this time. Further, the ROICC previously negotiated and compensated Metcalf for delays during this time period through bilateral modification A00022; and

      f.      Metcalf requested delay impact costs for Goodfellow Brothers, Inc. (GBI) in the amount of $817,154 in Line Item 25. The ROICC confirmed with on-site government personnel and through daily reports that GBI was working on site at all times since June 2005. There was no delay.

     19.     The SDO summarized the basis for the proposed debarment as follows:

Requesting compensation under a federal government contract for work that a contractor is already required to perform and/or has already been paid to perform, i.e. double billing, **constitutes a false claim against the United States**. Whether the double billing contained in the REA was the **result of fraud** by MCCI and Terry Metcalf, or the result of Terry Metcalf's **inability to comprehend and adhere to applicable law**, MCCI's REA and its pursuit of over $5M in non-compensable costs call into question its responsibility, honesty, and credibility as a contractor. . . . Conduct of this nature . . . constitutes a cause for debarment so serious that it affects MCCI and Terry Metcalf's present responsibility as contractors.

Exhibit 9, page 5-6 (emphasis added).

     20.     The Proposed Debarment Letter concludes that the "Administrative Record contains **adequate evidence** to support the proposed debarment of [Metcalf] under FAR 9.406-2(c) because [Metcalf's] conduct in this matter affects [Metcalf's] present responsibility as contractors." (emphasis added). See Exhibit 9 at page 6.

     21.     On or about May 10, 2007, in response to the Proposed Debarment Letter, counsel for Metcalf corresponded with Ms. Becker at the Navy, challenging the legality of a debarment based upon the Navy's denial of elements of Metcalf's September 2006 REA, and requesting a

complete copy of the administrative record, including any specific evidence that the Navy was relying upon in support of its contention that Metcalf knowingly submitted a false claim to the government. See Exhibit 10.

22.     By e-mail dated May 16, 2007, Ms. Becker responded to Metcalf's counsel's requests regarding the administrative record and evidence of fraud. See Exhibit 11. Ms. Becker identified the entire Administrative Record as: Metcalf's September 20, 2006 REA and the ROICC Determination Letter. *Id.* Ms. Becker produced no evidence, nor referenced any evidence, that Metcalf knowingly submitted a false claim to the government.

23.     By letter dated June 6, 2007, Metcalf formally responded to the Proposed Debarment Letter through counsel (the "Initial Response Letter"). See Exhibit 12. Metcalf challenged the factual and legal bases for the proposed debarment and requested the SDO cancel the proposed debarment or, alternatively, conduct additional fact finding and evaluation pursuant to the FAR. Metcalf also furnished a response to each of the six assertions characterized by the SDO as 'striking examples of double billing and submission of clearly non-compensable costs (i.e., fraud)'. In most cases, Metcalf refuted the Navy's factual contentions of double billing, fraud, etc., with a couple of exceptions. Metcalf discovered that the Navy correctly identified a submission, totaling $2,660, as a duplication of costs submitted by Metcalf's subcontractor. *Id.* at page 6. In a second case, Metcalf discovered and agreed that an invoice from another subcontractor that was included in the REA in the amount of $15,500, had been paid under Modification A00019. *Id.* In both cases, the inclusion of the duplicated costs was inadvertent on Metcalf's part. See Exhibit 12 at page 5-6; Exhibit 6, Declaration of W. Chun.

24.     On June 26, 2007, counsel for Metcalf met with the SDO and again challenged the factual and legal bases for the proposed debarment and requested the SDO cancel the

proposed debarment or, alternatively, conduct additional fact finding and evaluation pursuant to the FAR. During that meeting, a representative of Metcalf was made available by telephone to speak with the SDO regarding the factual allegations of the Proposed Debarment Letter, but the SDO only wanted to inquire about Metcalf's present responsibility. See Exhibit 13, Declaration of Eric Frechtel.

25.    During the June 26, 2007 meeting with the SDO, counsel for Metcalf also notified the SDO that the Navy's debarment action appeared to be a sanction for submitting a certified claim on March 30, 2007. See Exhibit 13. Counsel also informed the SDO of the Navy's mistreatment of Metcalf from the solicitation stage, which resulted in a successful protest by Metcalf to the United States Court of Federal Claims, and throughout performance as set forth in Metcalf's global certified claim. *Id.* At that point in time, both SDO stated that he was not aware of the existence of the global certified claim or the protest. Accordingly, Metcalf's counsel furnished the SDO with a copy of the global certified claim and the protest decision by the Court of Federal Claims (Exhibit 14 A and B). In addition, counsel for Metcalf furnished the SDO with the deposition testimony of the ROICC from a litigation matter involving Metcalf and its subcontractor Shockley & Burridge, in which the Navy had supported the subcontractor's contention that it had been wrongfully terminated for default by Metcalf. See Exhibit 14C. In that deposition, the ROICC stated that the Navy had been discussing debarring Metcalf during his tenure as ROICC, which ended in June 2006, which was three months prior to Metcalf's submitting its REA -- the basis for this debarment. *Id.*

26.    Immediately following the June 26, 2007 meeting with the SDO, Metcalf submitted a number of documents in support of its position and contradicting most of the

allegations from the Proposed Debarment Letter. A copy of that submittal is attached hereto as Exhibit 15.

27.    Upon information and belief, Ms. Becker, after the June 26, 2007 meeting, traveled to Hawaii in late June or the early part of July to "review supporting documentation submitted in connection with the Sept 2006 REA." See Exhibit 16. Prior to Ms. Becker's departure for Hawaii, counsel for Metcalf questioned the need for Ms. Becker to travel to Hawaii given the evidence provided by Metcalf to the SDO which clearly established that most of the Navy's contentions concerning duplication of costs were false. See Exhibit 17. Notwithstanding Metcalf's issue with the necessity of her travel, counsel for Metcalf offered to make Metcalf representatives, located in Hawaii, available to discuss any particular issues or items of concern or to provide further clarification and/or documentation. *Id.* Ms. Becker, during her visit to Hawaii, made no contact with Metcalf or its counsel. See Exhibit 6, Declaration of W. Chun.

28.    Following Ms. Becker's return from her investigation in Hawaii, the SDO, on July 25, 2007, provided counsel for Metcalf with a copy of the supporting documentation that had been provided by Metcalf in support of its REA and a copy of transmittal documents for Contract Modification A0019, which he placed into the Administrative Record. See Exhibit 18. In that cover letter, the SDO set August 6, 2007 as a date by which Metcalf could submit any additional matters in opposition or request an extension of time to do so.

29.    On August 6, 2007, Metcalf corresponded with the SDO requesting the SDO to identify and provide copies of all other documents reviewed by Ms. Becker during her trip to Hawaii, as well as identification of all persons she interviewed and the substance of those interviews. See Exhibit 19. Metcalf also repeated its request that it be afforded the opportunity

10

pursuant to FAR 9.406-3(b)(2) to present its case, including the presentation of witnesses and cross examination of the government's witnesses. *Id.*

30.    In response to Metcalf's August 6, 2007 request for additional documents and information, as well as for a fact-finding hearing, the Navy requested by letter dated August 9, 2007, that Metcalf "provide a list of specific material facts over which Metcalf believes there is a genuine dispute." See Exhibit 20.

31.    Metcalf responded to the Navy's request on August 15, 2007, providing a list of seven (7) point list of material issues in dispute. See Exhibit 21. Last but not least among that list was a request for a determination of "[w]hether more than 98% of costs claimed [in Metcalf's REA] were unsupported, based on factual inaccuracies, unrelated to the subject of the REA, or constituted double billing for work already paid and/or required by the contract," as contended by the Navy in the proposed Debarment Letter. See Exhibit 21, page 3.

32.    By letter dated August 23, 2007, the SDO denied Metcalf's requests for a fact-finding proceeding, contending that "the majority of issues identified in [Metcalf's August 15, 2007] letter contain requests for legal determinations rather than determinations of fact." See Exhibit 22. Additionally, the SDO stated that he was narrowing the scope of his "responsibility analysis" to four (4) discrete issues from Metcalf's REA and the ROICC's response thereto. Those issues were:

(1)  Submission of supporting documentation relating to PC No. 33 and No. 35, and force account reports related to PC No, 35 in connection with line item number 1 of the certified REA.

(2)  Submission of KEI invoice 26-04 in connection with line item no. 2, which MCCI concedes was previously paid under contract modification A00019

(3)  Submission of KEI invoices 26-30 (dated 3 May 2006) and 26-40 (dated June 15, 2006), both of which include the same 38 hours of work by Tony Barnard performed during May 2006.

(4)  Submission of attorneys' fees and expense in connection with line item number 12 that MCCI concedes are unrelated to the object of the REAs

The total dollar value of Items (1), (2), (3)and (4), above is $257,409 of the $5,214,760.60 claimed in Metcalf's REA, i.e., 5% of the REA. See Exhibit 6. The SDO, by narrowing the scope of his review, reduced the Navy's questionable costs to 5% of the REA value from the 98% originally charged as false.

33.     Included within Exhibit 22 is a Declaration of Orlino R. Peralta, a Navy civilian employee, which declaration was made a part of the administrative record by the SDO. Mr. Peralta's Declaration stated that he had examined Metcalf's REA and found that Metcalf had included certain cost backup totaling $107,510 in its REA for PC Numbers 33 and 35 that had nothing to do with contract modifications A00016 and A00017, and, in fact, had been paid under bilateral modification A00019. See Exhibit 22. The SDO ended his letter by stating "[y]ou may contact Kristin Becker . . . to clarify your position on PC#33 and PC #35 documentation or with any question." Id. The SDO did not set a date by which Metcalf needed to respond.

34.     In response to the Navy's August 23, 2007 letter, counsel for Metcalf revisited supporting cost documentation included in the REA based on Mr. Paralta's definition of the alleged duplication of costs. See Exhibits 6 and 13, Declarations of Walter Chun and Eric Frechtel. This time, Metcalf's investigation of the supporting documents revealed that the REA included costs for PC#35, which, although related to the removal of contaminated soil, had actually been paid for under Modification A00019. Id. Metcalf could not explain the mistake other than it had inadvertently been included due to the stated costs relationship to Chlordane contaminated soil. Id. As a result of this realization, Metcalf began preparation of a response on behalf of Metcalf to agree with the Navy's finding that Metcalf had erroneously included $107,510 in previously-paid costs in the REA. See Exhibit 13.

35.     Before Metcalf's response to the SDO's August 23, 2007 letter could be completed, Metcalf, without warning, received notice of the SDO's decision to debar Metcalf (dated September 4, 2007 and received on September 10, 2007) (the "Debarment Decision"). See Exhibit 23.

## THE DEBARMENT DECISION

36.     The Debarment Decision, similar to the Proposed Debarment Letter, consists of a two-page cover letter from the SDO and a fifteen (15) page memorandum to the SDO from an associate counsel in the Navy's Office of General Counsel identified as Kristin Becker. The cover letter does not state any independent basis for the proposed debarment and simply adopts the associate counsel's memorandum by reference and by the statement, "I find the facts to be as stated in the enclosed Memorandum." See Exhibit 23.

37.     Despite the lack of a hearing or other fact-finding determination, the Debarment Decision reports the following "findings" of the SDO:

a.  The SDO found that MCCI submitted an REA in which more than 98% of costs claimed were unsupported, based on factual inaccuracies, unrelated to the subject of the REA, or constituted double billing for work already paid and/or required by the contract. See Exhibit 21, page 5.

b.  MCCI's REA pursued over $5M in non-compensable costs. *Id.*

c.  [T]he double billing and unrelated costs were the result of fraud by MCCI and Terry Metcalf, or the result of Terry Metcalf's inability to comprehend and adhere to applicable law. See Exhibit 21, page 5 & 14.

d.  MCCI submitted numerous requests for payments that had already been paid under other contract actions. See Exhibit 21, page 14.

    e.  MCCI's REA and its pursuit of costs for which it had already been paid calls into question its responsibility, honesty, and credibility as a contractor. See Exhibit 21, page 14.

    f.  The Administrative Record contains adequate evidence to support the debarment of MCCI and Terry Metcalf under FAR 9.406-2(c) because their conduct in this matter affects their present responsibility as contractors. See Exhibit 23, page 16.

38.    Similar to the initial Proposed Debarment Letter, with one notable exception, the Debarment Decision's stated basis for the proposed debarment is set forth as follows:

> Requesting compensation under a federal government contract for work that a contractor is already required to perform and/or has already been paid to perform constitutes double billing. Whether the double billing and unrelated costs contained in the REA were the result of fraud by MCCI and Terry Metcalf, or the result of Terry Metcalf's inability to comprehend and adhere to applicable law, MCCI's REA and its pursuit of costs for which it had already been paid call into question its responsibility, honesty, and credibility as a contractor.

The exception relates to the phrase "**constitutes a false claim against the United States.**" Although present in the Proposed Debarment Letter (Exhibit 9), it is omitted from the Debarment Decision. Compare Exhibit 9, page 6 with Exhibit 23, page 14.

39.    The Debarment Decision contains a section titled *Conclusion*, in which the Navy states that "[t]he Administrative Record contains **adequate evidence** to support the debarment of MCCI and Terry Metcalf under FAR 9.406-2(c) because their conduct in this matter affects their present responsibility as contractors." (emphasis added). See Exhibit 23. The debarment was for a period of eighteen (18) months. Crediting for the time that MCCI and Metcalf were excluded from federal contracting because of their proposed debarment status, the debarment is effective through October 31, 2008. *Id.*

## COUNT I: REQUEST FOR TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF AGAINST THE DEBARMENT

40.     MCCI and Metcalf hereby incorporate by reference the allegations made in paragraphs 1 through 39 above, and re-allege them as though fully set forth herein.

41.     If an injunction is not issued, MCCI and Metcalf will suffer irreparable harm, as its ability to function as an ongoing business on state and federal public contracts will be thwarted.  Additionally, Metcalf has been unable to bid on several federal and state construction projects and will be unable to bid on future federal and state construction projects until October 31, 2008.  See Exhibit 23.

42.     The parties with whom Metcalf currently have contracts will not be harmed if the injunction is issued.  No governmental agency except for the Navy has complained about Metcalf's performance or integrity.  The Navy will suffer no harm in that the Contract has been completed and Metcalf has no other ongoing Navy contracts.

43.     The public interest will be furthered by the injunction in that the public has a right not to be subjected to unlawful and improper debarment proceedings and to demand that its public officials discharge their duties in accordance with law and regulation.

44.     There is a substantial likelihood of success on the merits.

45.     The Navy's debarment was arbitrary and capricious, not in accordance with law and regulation, made in bad faith, and imposed for purposes other than the protection of the government's interests.

WHEREFORE, Plaintiffs Metcalf Construction Company Inc. and Terry Metcalf request that a temporary restraining order, preliminary injunction, and permanent injunction be issued with respect to the effectiveness and enforcement of the September 4, 2007 Navy debarment notice, costs, attorneys' fees, and for such further relief as this Court deems proper.

## COUNT II:  DECLARE DEBARMENT ORDER VOID AND UNENFORCEABLE

46.     MCCI and Metcalf hereby incorporate by reference the allegations made in paragraphs 1 through 45 above, and re-allege them as though fully set forth herein.

47.     The SDO's decision to debar Metcalf was arbitrary, capricious, not in accordance with law or regulation, made in bad faith, imposed for purposes other than the protection of the government's interests and is therefore void and unenforceable.

48.     Metcalf avers that the following grounds exist to declare the debarment void and unenforceable:

> a.  Debarment of Metcalf pursuant to FAR 9.406-2(c) is unsupported by the Administrative Record and not in accordance with law;
>
> b.  The SDO failed to use the proper standard of proof under FAR Part 9.406-3(d)(3) in debarring Metcalf;
>
> c.  The Administrative Record fails to support the following findings made by the SDO:
>
> > i.  MCCI submitted an REA in which more than 98% of costs claimed were unsupported, based on factual inaccuracies, unrelated to the subject of the REA, or constituted double billing for work already paid and/or required by the contract.
> >
> > ii.  MCCI's REA pursued over $5M in non-compensable costs.
> >
> > iii.  [T]he double billing and unrelated costs were the result of fraud by MCCI and Terry Metcalf, or the result of Terry Metcalf's inability to comprehend and adhere to applicable law.

    iv.  MCCI submitted numerous requests for payments that had already been paid under other contract actions.

    v.  MCCI's REA and its pursuit of costs for which it had already been paid calls into question its responsibility, honesty, and credibility as a contractor.

    vi.  The Administrative Record contains adequate evidence to support the debarment of MCCI and Terry Metcalf under FAR 9.406-2(c) because their conduct in this matter affects their present responsibility as contractors.

d.  The SDO's debarment violates Metcalf's due process rights and liberty interests afforded by the Constitution;

e.  The SDO's debarment violates Metcalf's due process rights under the FAR by penalizing Metcalf for fraud without affording it a hearing and the right to confront witnesses;

f.  Debarment of Metcalf based solely on errors contained in a Request for Equitable Adjustment is premature and violates procedures set out in the FAR governing review and negotiation of Requests for Equitable Adjustment; and

g.  Metcalf's Debarment action was initiated in bad faith as one event in a series of events for: retaliation of Metcalf's successful challenge to the Navy's initial award of this contract; as retaliation for having submitted a global certified claim asserting that the Navy's bad faith conduct constitutes a material breach of the contract; and as a bad faith pre-emptive attempt to limit Metcalf's recovery under such global certified claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

      1.     Issue a temporary restraining order and preliminary and permanent injunction against enforcement of the Navy's September 4, 2007 debarment notice;

      2.     Terminate the Navy's debarment *ab initio*;

      3.     Award Plaintiffs their reasonable attorneys' fees and costs expended herein; and

      4.     Grant such other and further relief as this Honorable Court deems just.

October 11, 2007

Respectfully submitted,

ROBERT J. SYMON
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, NW, 12th Floor
Washington, D.C. 20036
(202) 393-7150

Counsel for Plaintiffs
TERRY METCALF and METCALF
CONSTRUCTION COMPANY, INC.

Of Counsel:

JEREMY BECKER-WELTS
Bradley Arant Rose & White LLP

07-1839
RMC

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Terry Metcalf
and
Metcalf Construction Company, Inc.

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)                88888

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert J. Symon
Bradley Arant Rose & White, LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036
(202) 393-7150

### DEFENDANTS

Donald C. Winter
and
Mark O. Wilkoff

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:07-cv-01839
Assigned To : Collyer, Rosemary M.
Assign. Date : 10/11/2007
Description: TRO/PI

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O  1 U.S. Government Plaintiff
- ⊙  2 U.S. Government Defendant
- O  3 Federal Question (U.S. Government Not a Party)
- O  4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O  A.  Antitrust**

- ☐ 410 Antitrust

**O  B.  Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**O  C.  Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**⊙  D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### O  E.  General Civil (Other)     OR     O  F.  Pro Se General Civil

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 U.S.C. § 701 et seq. Plaintiff seeks to overturn Agency debarment

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____ Check YES only if demanded in complaint
JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 10·11·07   SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.